UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARY TOTH, On Behalf of Herself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 4:18-cv-0706 |
| v. | ) ) ) | JURY TRIAL DEMAND |
| ZOE'S KITCHEN, INC., GREG DOLLARHYDE, THOMAS BALDWIN, SUE COLLINS, CORDIA HARRINGTON, KEVIN MILES, and ALEC TAYLOR | ) ) ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Mary Toth ("Plaintiff"), by her attorneys, on behalf of herself and those similarly situated, files this action against Defendants, and alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder class action on behalf of herself and all other public stockholders of Zoe's Kitchen, Inc. ("Zoe's Kitchen" or the "Company"), against Zoe's Kitchen and the Company's Board of Directors (the "Board" or the "Individual Defendants) for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of Defendants' efforts to sell the Company as a result of an unfair process for an unfair price to Cava Group, Inc. and Pita Merger Sub, Inc. ("Merger Sub," collectively with Cava Group, Inc., "Cava" or "Parent"), which are entities affiliated with Ronald M. Shaich ("Shaich") through Act III Holdings, LLC ("Act III").  Shaich through Act III, along with Artal International S.C.A. ("Artal"), an affiliate of The Invus Group LLC ("Invus"), are providing financing for Cava's proposed acquisition of Zoe's Kitchen.

2.      This action seeks to enjoin a stockholder vote in which Cava, through its affiliates, will acquire each outstanding share of Zoe's Kitchen common stock for $12.75 per share in cash, with a total valuation of approximately $300 million (the "Proposed Transaction").

3.      The terms of the Proposed Transaction were memorialized in an August 20, 2018 filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Zoe's Kitchen will become an indirect wholly owned subsidiary of Cava, and Zoe's Kitchen stockholders will receive $12.75 in cash for each share of Zoe's Kitchen common stock they own.

4.      Thereafter, on September 25, 2018, Zoe's Kitchen filed a Preliminary Proxy Statement on Schedule Prem14A (the "Preliminary Proxy") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.

5.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy describes an insufficient sales process in which the Board only paid lip service to its fiduciary duties by creating a committee of the Board to serve as a "Special Committee."  However, the Preliminary Proxy reveals that the Special Committee was inherently conflicted as Defendant Dollarhyde, the Company Chairman of the Board, former Chief Executive Officer, and an inside Director, was selected to sit on the Special Committee.

6.      Moreover, the Preliminary Proxy does not indicate what powers, if any this Special Committee would have to veto a proposed strategic alternative.

7.      Further shirking their fiduciary duties, it appears that the Special Committee, and the Board at large, decided against conducting any form of market check after the initiation indication of interest to purchase the Company was delivered.

8.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board

Members and executive officers will be able to exchange all Company equity awards for the merger consideration.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

9.     Further, Defendants have breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction which undervalues Zoe's Kitchen and is the result of a flawed sales process.

10.     Moreover, in violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and in violation of their fiduciary duties, Defendants caused to be filed with the SEC the materially deficient Preliminary Proxy on September 25, 2018, in an effort to solicit stockholders to vote their Zoe's Kitchen shares in favor of the Proposed Transaction.   The Preliminary Proxy is materially deficient and deprives Zoe's Kitchen stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction.   As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b) the financial projections for Zoe's Kitchen, provided by Zoe's Kitchen to the Company's financial advisor Piper Jaffray & Co. ("Piper Jaffray") for use in its financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor, Piper Jaffray.

11.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

**PARTIES**

12.     Plaintiff is an individual citizen of the Commonwealth of Massachusetts.  She is, and at all times relevant hereto has been, a Zoe's Kitchen stockholder.

13.     Defendant Zoe's Kitchen is a Delaware corporation and maintains its principal executive offices at 5760 State Highway, Suite 650, Plano, Texas, 75024.  Zoe's Kitchen's common stock is traded on the NYSE under the ticker symbol "ZOES."

14.     Defendant Greg Dollarhyde ("Dollarhyde") is a director of Zoe's Kitchen.   In addition, Dollarhyde serves as the Company's Chair of the Board and formerly served as its Chief Executive Officer from 2008 through 2011.

15.     Defendant Thomas Baldwin ("Baldwin") is a director of Zoe's Kitchen.

16.     Defendant Sue Collyns ("Collyns") is a director of Zoe's Kitchen.   In addition, Casey serves as a member of the Board's Compensation Committee.

17.     Defendant Cordia Harrington ("Harrington") is a director of Zoe's Kitchen.

18.     Defendant Kevin Miles ("Miles") is a director of Zoe's Kitchen.   In addition, Miles is CEO of the Company.

19.     Defendant Alec Taylor ("Taylor") is a director of Zoe's Kitchen.

20.     Defendants identified in paragraphs 14 through 19 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

21.     Non-Party Cava Group, Inc. is a private company that owns and operates a chain of Greek and Mediterranean restaurants in the United States.  As of the time of the Merger Announcement, Cava owned and operated sixty-six locations nationwide.  Cava is a private company incorporated in Delaware and headquartered at 702 H Street NW, Washington, DC.

22.     Non-Party Merger Sub is Delaware Corporation and a party to the Merger Agreement.  Merger Sub is a wholly-owned subsidiary of Cava.

23.     Non-Party individual Shaich is the sole manager of Act III and is personally financing, through Act III, $125 million equity required of Parent in the Proposed Transaction.  Shaich also attempted to negotiate a seat for himself on the Zoe's Kitchen Board during the sales

process in advance of a proposed private investment in public equity ("PIPE") deal to personally acquire a minority stake in Zoe's Kitchen.  Furthermore, Shaich is the founder, Chairman, and former CEO of Panera Bread Company, a direct competitor to Zoe's Kitchen.  Upon the completion of the Proposed Transaction Shaich will be the Chairman of the Board of the surviving entity.

24.     Non-Party Artal is a subsidiary of Invus, a global investment firm with approximately $8 billion of assets under its management.  Through Artal, Invus has pledged to finance $162 million of the equity required of Parent in the Proposed Transaction.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

26.     Personal jurisdiction exists over each Defendant either because Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Zoe's Kitchen  maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Zoe's Kitchen's common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any Defendant.

29.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable. According to the Company's most recent 10-Q, as of August 17, 2018, there were more than 19 million common shares of Zoe's Kitchen outstanding.  The actual number of public stockholders of Zoe's Kitchen will be ascertained through discovery;

b.      There are questions of law and fact which are common to the Class, including *inter alia*, the following:

i.      Whether Defendants have violated the federal securities laws;

ii.     Whether Defendants made material misrepresentations and/or omitted material facts in the Proxy;

iii.    Whether Defendants have breached their fiduciary duties; and

iv.     Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.      Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

30.      By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Zoe's Kitchen and owe the Company the duties of due care, loyalty, and good faith.

31.      By virtue of their positions as directors and/or officers of Zoe's Kitchen, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Zoe's Kitchen to engage in the practices complained of herein.

32.      Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.      act with the requisite diligence and due care that is reasonable under the circumstances;

b.      act in the best interest of the company;

c.      use reasonable means to obtain material information relating to a given action or decision;

d.      refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.      avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.      disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

33.      In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Zoe's Kitchen, are obligated to refrain from:

a.      participating in any transaction where the directors' or officers' loyalties are divided;

b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

34.      Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Zoe's Kitchen, Plaintiff and the other public stockholders of Zoe's Kitchen, including their duties of loyalty, good faith, and due care.

35.      As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Zoe's Kitchen common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

36.    According to its website, Zoe's Kitchen is a fast-casual restaurant concept serving a distinct menu of fresh, wholesome, Mediterranean inspired dishes delivered with Southern hospitality.  With more than 200 locations in 20 states across the United States, Zoe's Kitchen aims to deliver goodness to its customers by providing simple, tasty and fresh Mediterranean meals, inspired by family recipes, and made from scratch daily.

37.    Zoe's Kitchen has shown sustained solid financial performance.  For example, in a February 22, 2018 press release announcing the Company's fourth quarter and fiscal year 2017 financial results, the Company reported total revenue increased 15.2% in the quarter and 13.8% year over year with 39 new restaurants opening.  Defendant Kevin Miles, President and Chief Executive Officer of Zoe's Kitchen, commented, "I continue to be very pleased with our team's focus and discipline toward executing our initiatives, which resulted in improved operations and guest experience throughout the year, including our fourth quarter.  Seeing the positive impact of these initiatives on our business, I am confident that our strategy is on firm footing and that we are continuing to build a strong brand for long-term success."

38.    Speaking on these positive results Miles continued, "[l]ooking ahead to 2018, we are focused on several growth drivers that include new menu items and beverage innovation that will extend our leadership position in the Mediterranean category as well as drive growth in our dinner day part; investing in our digital platform and marketing to build deeper guest relationships and offer more convenience; and expanding our reach through off-premise catering and delivery channels.  We believe these initiatives, along with reducing our development to 25 new locations and leveraging our expense management efficiencies, are the right steps to drive long-term shareholder value."

39.    While the Company acknowledged certain financial issues coming out of the first quarter of 2018, the reaction of the financial press, the market and certain large stockholders of the Company establish the uniform reaction that this deal is undervalued and bad for stockholders.

40.     First, while the deal was announced at $12.75 per share, the stock has closed above the deal price on every trading day since the announcement and closed as high as traded as high as $13.70 on August 31, 2018.

41.     Furthermore, the hedge fund, PW Partners Atlas Fund, filed a Schedule 13D stating that the proposed Cava deal "undervalues" the Company.  The IPO price of the stock was $15.00 and just two years ago, the stock was trading above $35 a share.  More recently, its 52-week high was $17.65, more than 35% above the deal price.

42.     In fact, certain commentators have indicated that changing the CEO would have generated the same "premium" bump to the stock – and one where the Company's stockholders wouldn't end up without any investment.

43.     Nevertheless, the Individual Defendants have caused Zoe's Kitchen to enter into the Proposed Transaction, thereby depriving Plaintiff and other public stockholders of the Company the opportunity to reap the benefits of Zoe's Kitchen's present and future success

**The Insufficient Process**

44.     As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to Cava.

45.     First and foremost, it appears that no proper market check was conducted by the Company or its financial advisor after Cava had made its initial offer in July of 2018 and requested exclusivity.  Instead, the Preliminary Proxy indicates that the Board relied upon a market check that was initiated nearly a year beforehand and at that point had been concluded for approximately four months.  Such a failure to conduct a simple market check is even more astounding when one considers that the Preliminary Proxy admits that, at the time of Cava's initial bid, the Board considered the Company to be "not currently for sale."

46.     Additionally, while the Preliminary Proxy indicates that a "Special Committee" was created to facilitate the Board in its strategic review process, this Special Committee was

merely lip service to the Board's proper fiduciary duties.  Notably, the Committee was composed of only two Directors, one of whom, Defendant Dollarhyde is the current Chairman of the Company Board and had formerly been CEO of the Company for several years, as such, the Special Committee was not shielded by any improper motivations that such an insider may have had in entering into the Proposed Transaction.  Furthermore, as is apparent from the Preliminary Proxy, Defendant Dollarhyde was the chief point person for Shaich throughout the sales process, and thus headed the full Board's decision making throughout the sales process, as well as that of the Special Committee, as well being able to direct any negotiations with Shaich and Parent.

47.     Additionally, the Preliminary Proxy is unclear and/or misleading as to what the actual powers of the Special Committee are, especially in relation to whether Special Committee approval was necessary to submit a potential strategic alternative to the full Board, or if it had veto power over potential strategic alternatives.

48.     The Preliminary Proxy also fails to elaborate on or disclose the identity of certain "activist investors" that existed during the sales process, and how they affected the sales process or the decision to sell the Company.

49.     Moreover, the Preliminary Proxy fails to elaborate on whether Shaich, through his indirect holdings in Misada Capital Flagship Fund LP ("Misada"), which owned 16.8% of the Company at the time, had any influence in the decision making process that led to the entry into the Proposed Transaction, or what role Misada played in the sales process generally.

50.     Additionally, the Preliminary Proxy fails to indicate if Shaich, in his earlier attempts to gain a seat on the Zoe's Kitchen Board and execute a discussed PIPE agreement, was given any information that would have unfairly favored Shaich or Parent in the sales process over potentially interested third parties.

51.     The Preliminary Proxy is also unclear as to the nature of specific confidentiality and/or non-disclosure agreements Zoe's Kitchen entered into with various third parties and Parent throughout the sales process, if any such agreements were different from one another, the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in those agreements, and

if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

52.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate manner, with an obvious end-goal of a Cava transaction. For example, neither the Board nor the so-called independent Special Committee thought it proper to conduct a market check at any point after Cava's initial indication of interest to determine if any interested third parties existed at that time.

**The Proposed Transaction**

53.     On August 17, 2018, the Company issued a press release announcing that Zoe's Kitchen had agreed to be acquired by Cava in the Proposed Transaction.   The press release states, in relevant part:

> **August 17, 2018**, Plano, TX: Zoe's Kitchen, Inc., ("Zoe's Kitchen" or the "Company") (NYSE: ZOES), a fast-casual restaurant group with 261 domestic restaurant locations, today announced that it has entered into a definitive agreement to be acquired in a transaction by privately held Cava Group, Inc., ("CAVA") a fast-growing Mediterranean culinary brand with 66 restaurants.   The combined companies will have 327 restaurants in 24 states throughout the U.S.
>
> Under the terms of the agreement, Zoe's Kitchen shareholders will receive $12.75 in cash for each share of common stock they hold.   This represents a premium of approximately 33% to Zoe's Kitchen's closing share price on August 16, 2018 and a premium of approximately 33% to Zoe's Kitchen 30-day volume weighted average price ended on August 16, 2018, and an enterprise value of approximately $300 million.
>
> The acquisition of Zoe's Kitchen will be financed through a significant equity investment in CAVA led by Act III Holdings, the investment vehicle created by Ron Shaich, founder, chairman, and former CEO of Panera Bread, and funds advised by The Invus Group, with participation from existing investors SWaN & Legend Venture Partners and Revolution Growth.
>
> After closing, Brett Schulman, current Chief Executive Officer of CAVA, will serve as Chief Executive Officer of the combined company and will work closely with the existing leadership teams at Zoe's Kitchen and CAVA to oversee their growth and evolution.   Ron Shaich will serve as Chairman of the combined company.

**COMMENTS BY LEADERSHIP**

Kevin Miles, Zoe's Kitchen Chief Executive Officer said: "Zoe's Kitchen Board of Directors and Management are pleased to announce today's transaction.  Our mission was to deliver the highest value obtainable for our shareholders and pursuant to the transaction announced today our shareholders will be receiving a substantial premium to the Company's unaffected stock price.  I am proud of the significant work the team has executed over recent years to grow the Zoe's Kitchen footprint, build brand affinity and secure a leadership position in the Mediterranean and better-for-you category.  These efforts made it an attractive candidate for a transaction of this kind.  I'd like to thank each and every team member who will continue to make Zoe's Kitchen a differentiated dining experience every day."

Brett Schulman, CAVA Chief Executive Officer said: "Today's announcement is an exciting milestone for CAVA, and we're thrilled to welcome Zoe's Kitchen to our family.  Together, these two brands are united by a shared heritage and passion for exceptional Mediterranean cuisine.  Now with the addition of Zoe's Kitchen, we will be able to broaden our geographic footprint and meet the needs of even more guests — whether in Bethesda or Birmingham, Plano or Pasadena — who crave delicious, healthy food without compromise.  As part of the CAVA family, Zoe's Kitchen will benefit from CAVA's track record of bold culinary innovation and leveraging data and technology to drive growth and convenience."

Ron Shaich, Act III Holdings Chief Executive, CAVA board member, and CAVA investor said: "As a close observer of the fast-casual restaurant industry, I am thrilled at the prospect of what CAVA and Zoe's Kitchen can accomplish together. Together these businesses will create the leading company in one of the most important categories in fast casual today — Mediterranean — with the capabilities to drive extraordinary customer satisfaction and powerful growth."

**TERMS**

Consummation of the merger is subject to certain closing conditions, including the adoption of the merger agreement by the holders of a majority of the Company's outstanding common stock, and the expiration or early termination of all applicable waiting periods under the HSR Act.  CAVA has agreed to pay to the Company a $17 million termination fee if the merger agreement is terminated under certain circumstances and the merger does not occur.  The parties expect the merger to close in the fourth quarter of 2018.

Under the terms of the merger agreement, the Company is permitted to actively solicit, for a 35-day period, alternative acquisition proposals from potential buyer and business combination candidates.  There can be no assurance that any superior proposals will be received during this solicitation process or that any alternative transaction providing for a superior proposal will be consummated.  Except as may be required by law, the Company does not intend to disclose any developments

with respect to such a solicitation process unless and until the Company's board of directors determines that it has received a superior proposal.  The Company would be required to pay to CAVA an $8.5 million termination fee if the Company terminates the merger agreement to accept a superior proposal under certain circumstances.

The Company's Board of Directors has determined that the merger agreement with CAVA is fair to and in the best interests of the Company and the holders of the Company's common stock.

Zoe's Kitchen also announced that it will not hold its previously scheduled second quarter 2018 earnings conference call and web simulcast on the morning of Friday, August 17 and will not issue a press release with second quarter 2018 financial results.  The Company expects to file its quarterly report with second quarter 2018 financial results on or before August 20, 2018.

**TRANSACTION ADVISORS**

Piper Jaffray served as financial advisor to Zoe's Kitchen, and Greenberg Traurig, LLP acted as legal advisor to Zoe's Kitchen on the transaction.

Morgan Stanley & Co. LLC acted as financial advisor to Act III Holdings (Ron Shaich) and The Invus Group.  Citigroup Global Markets Inc. acted as financial advisor to CAVA.  Skadden, Arps, Slate, Meagher & Flom acted as legal advisors to CAVA.  Sullivan & Cromwell and Simpson Thacher & Bartlett served as legal advisors to Act III Holdings (Ron Shaich) and The Invus Group, respectively.

### The Inadequate Merger Consideration

54.     As set forth above, the consideration to be provided pursuant to the Proposed Transaction significantly undervalues the Company.   The merger consideration does not adequately reflect the intrinsic value of the Company.  Moreover, the merger consideration does not adequately take into consideration how the Company is performing, considering increases in revenues reported by the Company recent quarters of the past financial year.   Notably, the Company has traded as high as $17.65 in the last year and its IPO price was $15.00 per share.

55.     Furthermore, the hedge fund, PW Partners Atlas Fund, filed a Schedule 13D stating that the proposed Cava deal "undervalues" the Company.  The IPO price of the stock was $15.00

and just two years ago, the stock was trading above $35 a share.  More recently, its 52-week high was $17.65, more than 35% above the deal price.

56.     Commentators have also focused on the fact that the Company has not been given adequate time to mature in its market and if given such time, would show marked improvement. Thus, the opportunity to invest in such Company is a great coup for Cava; however, but it undercuts the foresight and investment of Plaintiff and all other public stockholders who have done the same.

57.     Moreover, post-closure, Zoe's Kitchen stockholders will be completely cashed out from any and all ownership interest in the Company, forever foreclosing them from receiving any future benefit in their investment as Zoe's Kitchen continues on its upward financial trajectory.

58.     It is apparent from these statements and the facts set forth herein that this deal is designed to maximize benefits for Cava at the expense of Zoe's Kitchen and Zoe's Kitchen's stockholders, which indicates that Zoe's Kitchen stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

59.     The Merger Agreement contains certain provisions that unduly benefit Cava by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that requires Zoe's Kitchen to pay $8.5 million to Cava if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Zoe's Kitchen must pay this termination fee even if it consummates any Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in

combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

60.     Once the brief 35-day go-shop period expired, the Merger Agreement contained a "No Solicitation" provision that now restricts Zoe's Kitchen from considering alternative acquisition proposals by, *inter alia*, constraining Zoe's Kitchen's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an "bona fide written Company takeover Proposal" if it constitutes or is reasonably calculated to lead to a "Superior Proposal" as defined in the Merger Agreement.

61.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  The Individual Defendants agreed to provide Cava information in order to match any other offer, thus providing Cava access to the unsolicited bidder's financial information and giving Cava the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Cava.

62.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

63.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

*Potential Conflicts of Interest*

64.    The sales process as indicated in the Preliminary Proxy leading up to the Proposed Transaction indicate serious flaws in the supposed unbiased nature of the decision to enter into the Proposed Transaction.

65.    First and foremost, as mentioned above and in the Preliminary Proxy, the Special Committee tasked with overseeing the sales process was conflicted from its inception with the inclusion of Defendant Dollarhyde.

66.    In addition, the breakdown of the benefits of the deal indicate that Zoe's Kitchen insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Zoe's Kitchen.

67.    Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for significant stakes in the combined corporation upon the consummation of the Proposed Transaction.

| Name and Address of Beneficial Owner | Amount and Nature of Beneficial Ownership | Percent (%) |
|---|---|---|
| Misada Capital Flagship Fund LP(1) | 3,295,334 | 16.8% |
| Brown Capital Management, LLC(2) | 3,275,774 | 16.7% |
| Vintage Capital Management, LLC(3) | 1,950,000 | 9.9% |
| PW Partners Atlas Fund II LP(4) | 1,262,114 | 6.4% |
| Morgan Stanley(5) | 1,419,340 | 7.2% |
| BlackRock, Inc.(6) | 1,205,407 | 6.2% |
| Armistice Capital, LLC(7) | 1,000,000 | 5.1% |
| Kevin Miles(8) | 395,924 | 2.0% |
| Sunil Doshi(9) | 82,577 | * |
| James Besch(10) | 55,380 | * |
| Michael Todd(11) | 35,535 | * |
| Greg Dollarhyde(12) | 163,188 | * |
| Sue Collyns(12) | 22,521 | * |
| Thomas Baldwin(12) | 16,854 | * |
| Alec Taylor(12) | 15,288 | * |

| | | |
|---|---|---|
| Cordia Harrington(12) | 13,698 | * |
| **All executive officers and directors as a group**<br>**(9 total)** | 801,937 | 4.1% |

68.     Notably Misada, an entity in which Shaich has an indirect ownership in, controls nearly 17% of the Company.

69.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option, will be canceled and converted into the right to receive cash consideration.

70.     Additionally, upon the consummation of the Proposed Transaction, each outstanding Company restricted stock unit ("RSU"), will be canceled and converted into the right to receive cash consideration.

71.     As detailed below, certain of the Individual Defendants and Company insiders own millions of dollars in large illiquid blocks of Zoe's Kitchen stock and/or options, RSUs, and/or other equity awards, which will be paid out as follows under the terms of the Proposed Transaction:

| Name | Number of Shares Subject to Company Options | Total Consideration for Company Options | Number of Company RSU Awards | Total Consideration for Company RSU Awards | Number of Company Restricted Shares | Total Consideration for Company Restricted Shares | Aggregate Consideration for Company Awards |
|---|---|---|---|---|---|---|---|
| Kevin Miles | 454,688 | $ 0 | 55,416 | $ 706,554 | 36,800 | $ 469,200 | $ 1,175,754 |
| Sunil Doshi | 165,250 | $ 0 | 20,704 | $ 263,976 | 19,516 | $ 248,829 | $ 512,805 |
| James Besch | 50,325 | $ 0 | 5,687 | $ 72,509 | 0 | $ 0 | $ 72,509 |
| Michael Todd | 62,640 | $ 0 | 5,687 | $ 72,509 | 0 | $ 0 | $ 72,509 |
| Cordia Harrington | 0 | $ 0 | 5,885 | $ 75,034 | 0 | $ 0 | $ 75,034 |
| Alec Taylor | 0 | $ 0 | 5,885 | $ 75,034 | 0 | $ 0 | $ 75,034 |
| Thomas Baldwin | 0 | $ 0 | 5,885 | $ 75,034 | 0 | $ 0 | $ 75,034 |
| Sue Collyns | 0 | $ 0 | 5,885 | $ 75,034 | 0 | $ 0 | $ 75,034 |
| Greg Dollarhyde | 0 | $ 0 | 5,885 | $ 75,034 | 0 | $ 0 | $ 75,034 |

72.     Moreover, certain employment agreements with all Zoe's Kitchen executives are entitled to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Zoe's Kitchen common

stockholders.  Specifically, such golden parachute compensation will be paid out to Company insiders as follows:

| Name | Cash ($)(1) | | Equity ($)(2) | | Perquisites/ Benefits ($)(3) | | Total ($) |
|---|---|---|---|---|---|---|---|
| Kevin Miles | $ | 1,750,488 | $ | 1,175,754 | $ | 15,294 | $ | 2,941,536 |
| Sunil Doshi | $ | 838,420 | $ | 512,805 | $ | 11,588 | $ | 1,362,813 |
| James Besch | $ | 264,974 | $ | 72,509 | $ | 7,725 | $ | 345,208 |
| Michael Todd | $ | 303,750 | $ | 72,509 | $ | 9,331 | $ | 385,590 |

73.    It is no wonder that, in light of the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value in order to secure a quick sale.

74.    Thus, while the Proposed Transaction is not in the best interests of Zoe's Kitchen stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Preliminary Proxy Statement**

75.    On September 25, 2018, the Company filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading up to the Proposed Transaction*

76.    Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy fails to disclose:

a.    The Preliminary Proxy fails to disclose sufficient information regarding the number and nature of all confidentiality agreements entered into between Zoe's Kitchen and any interested third party (including Parent and its affiliates) during

the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid;

b.   The Preliminary Proxy fails to adequately disclose information regarding why no further market check was conducted at the time Shaich presented an interest in acquiring the Company;

c.   The Preliminary Proxy fails to disclose the basis for creating a Special Committee that contained Defendant Dollarhyde and was therefore, not independent;

d.   The Preliminary Proxy fails to adequately identify the powers and responsibilities of the Special Committee, and if approval of the Special Committee was required before a transaction would be presented to the full Board;

e.   The Preliminary Proxy fails to elaborate upon or disclose the identity of certain "activist investors" that existed during the sales process, and how they affected the sales process or the decision to sell the Company;

f.   The Preliminary Proxy fails to elaborate upon if Shaich, through his indirect holdings in Misada Capital Flagship Fund LP ("Misada"), which owned 16.8% of the Company at the time, had any influence in the decision-making process that led to the entry into the Proposed Transaction, or what role Misada played in the sales process generally; and

g.  The Preliminary Proxy fails to indicate if Shaich, in his earlier attempts to gain a seat on the Zoe's Kitchen Board and execute a discussed PIPE agreement, was given any information that would have unfairly favored Shaich or Parent in the sales process over potentially interested third parties.

*Omissions and/or Material Misrepresentations Concerning Zoe's Kitchen Financial Projections*

77.     The Preliminary Proxy fails to provide material information concerning financial projections provided by Zoe's Kitchen management and relied upon by Piper Jaffray in its analyses.  The Preliminary Proxy discloses management-prepared financial projections for the Company which are materially misleading.  The Preliminary Proxy indicates that in connection with the rendering of Piper Jaffray's fairness opinion, Piper Jaffray reviewed "reviewed and analyzed certain information furnished to Piper Jaffray by the Company relating to the business, operations and prospects of the Company, including the Company Projections provided by Company management."  Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that Zoe's Kitchen management provided to the Board and Piper Jaffray.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

78.     The Preliminary Proxy fails to provide material information concerning the financial projections prepared by Zoe's Kitchen management.  Specifically, the Preliminary Proxy fails to disclose the material line items for the following metrics: Restaurant Opening Costs, Adjusted General and Administrative Costs, Restructuring Costs and the Projection Data for the

line items used by Piper Jaffray in calculating Unlevered Free Cash Flow in Piper Jaffray's Unlevered Free Cash Flow Analysis.

79.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

80.     Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of Zoe's Kitchen are unable to properly evaluate the Company's true worth, the accuracy of Piper Jaffray's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Piper Jaffray*

81.     In the Preliminary Proxy, Piper Jaffray describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions:

82.     With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy fails to disclose the following:

      a.   The specific benchmark multiples for each analyzed comparable company;

      b.   The specific benchmark multiples for Zoe's Kitchen on a standalone basis.

83.     With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy fails to disclose the following:

      a.   The specific date on which each selected transaction closed;

      b.   The specific date on which each selected transaction was announced;

      c.   The value of each selected transaction;

      d.   Which selected transactions were chosen for having targets that "operate in the limited service restaurant industry" and which were chosen for having targets that "were go-private transaction in the broader restaurant industry"; and

      e.   The specific benchmark multiples for each transaction.

84.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

      a.   the specific inputs and assumptions used to calculate the discount rate range of 9.2% to 14.2%, with a mid-point of 11%; and

      b.   the inputs and assumptions underlying the selected EBITDA exit multiples; and

      c.   the terminal values calculated.

85.    With respect to the *Premiums Paid Analysis*, the Preliminary Proxy fails to disclose the following:

      a.   The specific name of the companies involved in each of the 48 transactions; and

      b.   The specific one-day, 30-day, and 60-day premia for each transaction analyzed.

86.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

87.    Without the omitted information identified above, Zoe's Kitchen public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Zoe's Kitchen public stockholders cannot gauge

the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

## FIRST COUNT

## Claim for Breach of Fiduciary Duties

## (Against the Individual Defendants)

88.     Plaintiff repeats all previous allegations as if set forth in full herein.

89.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiffs and the Company's public stockholders.

90.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Zoe's Kitchen.

91.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Zoe's Kitchen by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Zoe's Kitchen to its public stockholders.

92.     Indeed, Defendants have accepted an offer to sell Zoe's Kitchen at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

93.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction.

94.     The Individual Defendants dominate and control the business and corporate affairs of Zoe's Kitchen, and are in possession of private corporate information concerning Zoe's Kitchen's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Zoe's Kitchen which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

95.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

96.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Zoe's Kitchen's assets and have been and will be prevented from obtaining a fair price for their common stock.

97.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

98.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

99.     Plaintiff repeats all previous allegations as if set forth in full herein.

100.    Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

101.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

102.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

103.    The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

104.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

105.    The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

106. The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

107. Plaintiff repeats all previous allegations as if set forth in full herein.

108. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

109. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary

Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

110.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Zoe's Kitchen' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

111.    The Individual Defendants acted as controlling persons of Zoe's Kitchen within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Zoe's Kitchen to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Zoe's Kitchen and all of its employees.  As alleged above, Zoe's Kitchen is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class, and against Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.      In the event that Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Zoe's Kitchen and obtain a transaction which is in the best interests of Zoe's Kitchen and its stockholders;

F.      Directing Defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

DATED:  October 5, 2018.

Respectfully submitted,

*/s/ Thomas E. Bilek*

Thomas E. Bilek
TX Bar No. 02313525
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Evan J. Smith
Marc L. Ackerman

**BRODSKY & SMITH, LLC**
Two Bala Plaza, Suite 510
Bala Cynwyd, PA  19004
Telephone: 610.667.6200
esmith@brodskysmith.com
mackerman@brodskysmith.com